UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AARON RUBIN,<br><br>      Plaintiff,<br><br>  v.<br><br>US BANK HOME MORTGAGE, *et al.*,<br><br>      Defendants. | Case No. 22–cv–00906–ESK–SAK<br><br>OPINION |

**KIEL, U.S.D.J.**

    **THIS MATTER** is before the Court on defendant U.S. Bank National Association's [1] motion for summary judgment. (ECF No. 54.) For the following reasons, defendant's motion will be DENIED.

    **I.    BACKGROUND**

    Plaintiff Aaron Rubin obtained a mortgage for a property located in Lakewood, New Jersey on June 29, 2016. (ECF No. 59–1 pp. 10–19.) As memorialized in an April 6, 2020 letter to plaintiff, plaintiff and defendant entered into a forbearance plan whereby plaintiff's obligation to make mortgage payments was suspended. (ECF No. 59–2 pp. 2–4.)[2] The forbearance plan

---

[1] Defendant states that it was misnamed "US Bank Home Mortgage" in the complaint. (ECF No. 56 (Def.'s Mot. Br.) p. 7.)

[2] Plaintiff states in his complaint that he sought forbearance through the Coronavirus Aid, Relief, and Economic Security (CARES) Act. (ECF No. 1–3 (Compl.) p. 5.) The CARES Act provided borrowers of federally backed mortgages the opportunity to request a forbearance period of up to 180 days, with an additional 180 days permitted, while servicers were temporarily unable to foreclose on defaulted loans. *See* Michelle D. Layser, et al., *Mitigating Housing Instability During a Pandemic*, 99 Or. L. Rev. 445, 483 (2021). The CARES Act further amended the Fair Credit Reporting Act so that when a consumer received an accommodation, their account was to be reported as current if the consumer was not required to make one or

was to span from April 1, 2020 to September 1, 2020. (ECF No. 59–3 (Def.'s Ex. 3) p. 1.) In its April 6, 2020 monthly update to consumer reporting agencies, defendant marked plaintiff's account status as "11/CURRENT" with a Special Comment Code "CP/ACCOUNT IN FORBEARANCE." (ECF No. 59–4 (Def.'s Ex. 4) p. 6.)

Meanwhile, plaintiff purchased a separate property with cash in January 2020 and thereafter applied for a "cash out" mortgage to recoup funds. (ECF No. 57–6 (Def.'s Ex. 11) pp. 53–58; ECF No. 65–10 (Pl.'s Decl.) p. 1.) Plaintiff filled out a loan application with FM Home Loans, LLC on February 10, 2020 for a $285,000 loan with an interest rate of 4.625 percent. (Def.'s Ex. 11 pp. 53–58.) As of April 20, 2020, the interest rate dropped to 4.125 percent. (*Id.* p. 4.) That same day, FM Home Loans pulled plaintiff's credit report. (*Id.* pp. 102–109.) The report showed that plaintiff's account with defendant was in forbearance and payment was deferred. (*Id.* p. 103.) A rate could not be locked in due to the forbearance. (*Id.* p. 3.)

Plaintiff contacted defendant on April 20, 2020 to cancel the forbearance plan. (Def.'s Ex. 3 p. 10; Pl.'s Decl. pp. 1, 2.) Defendant provided its monthly update to consumer reporting agencies on May 5, 2020 and marked plaintiff's account status as "11/CURRENT" with no Special Comment Code. (Def.'s Ex. 4 p. 6.)

Between May 4, 2020 and May 5, 2020, defendant received disputes from consumer reporting agencies Equifax, Experian, and TransUnion stating that plaintiff's account was incorrectly reported as in forbearance. (*Id.* pp. 1–32.) Defendant responded to the consumer reporting agencies on May 19, 2020 and May 20, 2020. (*Id.* pp. 10, 11, 20, 21, 31, 32.) Plaintiff does not dispute that

---

more payments. *Hafez v. Equifax Info. Servs., LLC*, Case No. 20–09019, 2021 WL 1589459, at *2 (D.N.J. Apr. 23, 2021) (discussing 15 U.S.C. §1681s–2(a)(1)(F)(ii)(I)–(II)). The CARES Act does not provide a private right of action. *Arsenis v. Blue Foundry Bancorp*, Case No. 24–08978, 2025 WL 383750, at *9–10 (D.N.J. Feb. 4, 2025).

defendant notified Equifax to remove the Special Comment Code, but asserts that the record does not support that a similar instruction was provided to Experian and TransUnion. (*Id.*; ECF No. 65–1 pp. 4, 5.) Plaintiff also notes that defendant did not instruct the consumer reporting agencies to remove the "D" from the Terms Frequency field (*id.*), the significance of which is disputed by the parties.

On August 3, 2020, plaintiff obtained a $300,000 loan with an interest rate of 3.875 percent. (ECF No. 57–5 pp. 6–8.) Plaintiff claims in a declaration that he was unable to close on a mortgage until in or around July 2020 due to the error in his credit report. (Pl.'s Decl. p. 2.) He further claims that he faced significant financial challenges between April 2020 and July 2020 and that he approached family and friends for money to cover basic living expenses. (*Id.*) Plaintiff experienced fear, anxiety, loss of sleep, weight loss, stress headaches, and feelings of hopelessness as a result. (*Id.*)

Plaintiff filed suit in New Jersey Superior Court – Law Division in Ocean County on January 20, 2022 alleging violations of the Fair Credit Reporting Act against defendant, Equifax, Experian, and TransUnion. (Compl.) TransUnion removed to this District on February 20, 2022. (ECF No. 1.)

On November 10, 2022 and February 2, 2023, plaintiff filed notices of settlement with Equifax and TransUnion. (ECF Nos. 26, 31.) District Judge Georgette Castner later so-ordered stipulations of dismissal as to Equifax, Experian, and TransUnion. (ECF Nos. 36, 38, 40.) The pending motion followed. While motion practice was ongoing, the case was reassigned to me. (ECF No. 68.)

## II. STANDARDS

### A. Motions for Summary Judgment

The Federal Rules of Civil Procedure dictate that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine when "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and a fact is "'material' if it 'might affect the outcome of the suit under the governing law.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Facts and evidence are to be viewed in the light most favorable to the nonmovant.  *Id.*

### B. Fair Credit Reporting Act

The Fair Credit Reporting Act "is intended 'to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)).  It is a remedial statute and its "consumer oriented objectives support a liberal construction …." *Cortez*, 617 F.3d at 706 (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

Furnishers of information, like defendant, have various duties under the Act, including the duties to report accurate information and conduct investigations as to the completeness and accuracy of information upon a dispute.  *SimmsParris*, 652 F.3d at 357; *see also* 15 U.S.C. §1681s–2(a)–(b).  Despite the duty to report complete and accurate information to consumer reporting agencies on first instance, there is no private right of action for related violations.  *See Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014); *see also* 15 U.S.C. §1681s–2(c).  Instead, enforcement is left to federal and state authorities.  15 U.S.C. §1681s–2(d).

"This leaves 15 U.S.C. §1681s–2(b) as the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of

4

information." *SimmsParris*, 652 F.3d at 358; *see also Seamans*, 744 F.3d at 864 (noting that the claims were predicated exclusively on the defendant's conduct after it was informed of the plaintiff's dispute by the consumer reporting agency).[3]  Private causes of action may be premised on negligent or willful violations of 15 U.S.C. §1681s–2(b). *Ritz v. Equifax Info. Servs., LLC*, Case No. 23–02181, 2025 WL 1303945, at *3 (3d Cir. May 6, 2025). Actual damages may be awarded for negligent violations under 15 U.S.C. §1681*o* while both actual and punitive damages may be awarded for willful violations under 15 U.S.C. §1681n. *Cortez*, 617 F.3d at 718.

Upon notice of a dispute, furnishers are to conduct an investigation as to the disputed information, review all relevant information provided by the consumer reporting agency, and report the results of its investigation to the consumer reporting agency. 15 U.S.C. §1681s–2(b)(1)(A)–(C). If the disputed information was inaccurate or incomplete, the results of the investigation are to be reported to all other consumer reporting agencies to which information was furnished and that compile and maintain files on consumers nationally. *Id.* §1681s–2(b)(1)(D). Information that is inaccurate, incomplete, or unverifiable is to be modified, deleted, or permanently blocked from being reported to consumer reporting agencies. *Id.* §1681s–2(b)(1)(E).

Private liability under 15 U.S.C. §1681s–2(b) thus requires 1) the consumer to alert the consumer reporting agency of their dispute, 2) the consumer reporting agency to notify the furnisher of the dispute—triggering

---

[3] In addition to events that took place before defendant received notice of disputes from the consumer reporting agencies, plaintiff and his expert also refer to disputes made directly to defendant. (*See, e.g.*, ECF No. 65 (Pl.'s Opp'n Br.) pp. 16, 17, 20, 21; ECF No. 65–7 (Hollon Report) pp. 14–16, 23.) A furnisher's duties under 15 U.S.C. §1681s–2(b) are only triggered after it receives notice of a dispute from a consumer reporting agency. *Stefanowicz v. SunTrust Mortg.*, 765 F. App'x 766, 772–73 (3d Cir. 2019). In other words, "[a] consumer may certainly notify a furnisher/creditor directly about her dispute … but there is no private cause of action under §1681s–2(b) for a furnisher's failure to properly investigate such a dispute." *Id.* at 773.

the furnisher's duty to investigate, and 3) the furnisher to fail to undertake a reasonable investigation. *See SimmsParris*, 652 F.3d at 359; *see also Ritz*, 2025 WL 1303945, at *3 (noting that circuit courts have agreed to two threshold requirements for 15 U.S.C. § 1681s–2(b) liability, "(1) '[t]he plaintiff must make a prima facie showing that the ... furnisher provided incomplete or inaccurate information,' and (2) '[t]he plaintiff must ... show that the incompleteness or inaccuracy was the product of an unreasonable investigation.'" (alterations and omissions in original) (quoting *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023))). A reasonable investigation "is one that a reasonably prudent person would undertake under the circumstances" and "when assessing reasonableness, the factfinder must balance 'the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.'" *Tauro v. Capital One Fin. Corp.*, 684 F. App'x 240, 242 (3d Cir. 2017) (quoting *Seamans*, 744 F.3d at 864–65). The reasonableness of an investigation is generally reserved for trial unless "the reasonableness or unreasonableness of the procedures is beyond question." *Id.* (quoting *Cortez*, 617 F.3d at 709).

### III. DISCUSSION

#### A. Liability

##### 1. Party Arguments

Defendant submits that its reporting and responses to disputes were truthful, accurate, and consistent with statutory obligations and reporting guidelines. (Def.'s Mot. Br. p. 13.) The Fair Credit Reporting Act merely requires that a furnisher modify, delete, or permanently block the reporting of inaccurate or incomplete information but does not require a particular response code to achieve those outcomes. (*Id.* p. 16.) The record shows that defendant accurately reported that plaintiff's account was in forbearance with a Special Comment Code in April 2020 and then did not report the forbearance in May 2020. (*Id.*) Upon receipt of the three disputes in May 2020, defendant asserts

that it conducted reasonable investigations and satisfied its statutory duty by instructing the consumer reporting agencies to remove the Special Comment Code. (*Id.*) Liability cannot attach to a furnisher that provided accurate information in a monthly update and satisfied its duty to investigate. (*Id.* pp. 17, 18.) Even if its reporting was technically inaccurate, there has been no showing of willfulness or negligence, according to defendant. (*Id.* p. 18.)

Plaintiff responds that there is no dispute that, as of April 20, 2020, his account was no longer in forbearance and should not have been reported as such. (Pl.'s Opp'n Br. p. 11.) Plaintiff further agrees that it was appropriate for defendant to remove the Special Comment Code in response to the disputes, but contends that it ought to have also corrected the Terms Frequency field and verified inaccurate information by failing to do so. (*Id.* pp. 12, 13.) The parties' experts agree that not updating the Terms Frequency field was incorrect. (*Id.* p. 13.) A question of fact thus remains whether defendant's actions were reasonable and if any violations were willful or negligent. (*Id.* p. 14.) Plaintiff proposes several steps that defendant could have taken in conducting a reasonable investigation, including amending the Terms Frequency field and pulling a "Bullseye Report." (*Id.* pp. 15–18.) Further, plaintiff argues that there is ample evidence for a jury to conclude that defendant was reckless and therefore willful and that courts within other circuits have found willfulness as a matter of law when faced with similar facts. (*Id.* pp. 20–23.) Finally, plaintiff submits that defendant's failure to report his account as in dispute alone constitutes an inaccuracy and violation of the Fair Credit Reporting Act. (*Id.* pp. 27–29.)

## 2. <u>Analysis</u>

I agree with defendant that this case turns on whether it furnished accurate information and reasonably investigated disputes in May 2020. (ECF No. 71 (Def.'s Reply Br.) p. 5.) Further, after reviewing the parties' statements

7

of facts and exhibits, the parties' disagreement appears to be less about what actions were taken than the significance of those actions. To better understand their significance, I turn to the parties' experts.

Defendant's expert, John Ulzheimer, states in his report that upon receiving the three disputes, defendant instructed the consumer reporting agencies to remove the Special Comment Code "CP," indicating that it was not verifying that plaintiff's account was in forbearance. (ECF No. 58–1 (Ulzheimer Report) p. 17.) This could be accomplished by leaving the Special Comment Code field blank or including only an asterisk because a Special Comment Code is not "sticky" and must be affirmatively rereported or refurnished. (*Id.*) The record shows that defendant responded to Equifax by placing an asterisk in the Special Comment Code field and to Experian and TransUnion by leaving the field blank. (Def.'s Ex. 4 pp. 10, 20, 31.) Similarly, defendant's monthly update to the consumer reporting agencies did not include a Special Comment Code of "CP," according to Ulzheimer, which effectively instructed the agencies that the account was no longer in forbearance because a Special Comment Code must be affirmatively furnished. (Ulzheimer Report p. 17; *see also* Def.'s Ex. 4 p. 6.)

Plaintiff's expert, Douglas A. Hollon, cites to the frequently asked questions and answers section of the Credit Reporting Resource Guide, which is used within the credit reporting industry to address issues of accuracy and completeness. (Hollon Report pp. 9–11.) The guide states that when a deferred account or account in forbearance goes into repayment, values for Terms Duration, Terms Frequency, and Scheduled Monthly Payment Amount should be entered and the Terms Frequency field should report something other than "D." (*Id.* pp. 10, 11.) Hollon opines that defendant's dispute responses did not change the Terms Frequency field and also continued to report the account as in forbearance. (*Id.* pp. 16–23.) Hollon further states that

defendant ought to have reported plaintiff's account with a code indicating that it was disputed. (*Id.*)

Ulzheimer, in his rebuttal report, claims that Hollon ignores industry standard practice of using a blank code to remove a previously reported Special Comment Code. (ECF No. 58–2 pp. 3, 4.) Hollon's opinion that plaintiff's account should have been reported as in dispute is also contrary to standards set in the Credit Reporting Resource Guide, according to Ulzheimer. (*Id.* pp. 4, 5.) The experts therefore disagree whether defendant's responses accurately reported plaintiff's account by leaving the Special Comment Code field blank or responding with an asterisk and not reporting the account as disputed. It is not my role at summary judgment to declare a victor in this battle of experts. *See Kunstlinger v. Lincoln Benefit Life Co.*, Case No. 22–04534, 2025 WL 252432, at *7 (D.N.J. Jan. 21, 2025).

More persuasively, Ulzheimer does not rebut Hollon's opinion that the Terms Frequency field ought to have been updated in defendant's dispute responses. To the contrary, during his deposition Ulzheimer acknowledged that a "D" in the Terms Frequency field means "deferred" and that one reason to place a "D" in the Terms Frequency field is because the account is in forbearance. (ECF No. 57–2 pp. 44:10–45:14.) Ulzheimer stated that once deferment ends, the Terms Frequency field should be changed to reflect the actual terms of the obligation. (*Id.* p. 46:5–16.) He further confirmed that the Terms Frequency field is sticky, meaning that if there is nothing in the Terms Frequency field in the dispute response or monthly update, the preexisting value remains. (*Id.* pp. 48:15–49:9; 53:9–18.)

There thus seems to be agreement among the experts that in order to accurately report that payment was no longer deferred, defendant needed to

change the Terms Frequency field to something other than "D."[4] The record shows that the responsive fields were left blank. (Def.'s Ex. 4 pp. 10, 20, 31.) I am unconvinced by defendant's assertion that plaintiff's Terms Frequency argument is a "red herring." (Def.'s Reply Br. pp. 8, 9.) Rather, at this stage in which the burden is on defendant to demonstrate that it is entitled to summary judgment, I conclude that at the very least a genuine dispute exists whether defendant verified inaccurate information.

The mere fact that inaccurate information has been reported does not mean that a furnisher's investigation was unreasonable. *See Scarbo v. Wisdom Fin.*, Case No. 20–05355, 2022 WL 309161, at *9 (E.D. Pa. Feb. 2,

---

[4] The declaration of Lisa Willis, senior litigation support consultant for Equifax Inc., states that the code "D" in the Terms Frequency field is used by furnishers to indicate that an account is in forbearance. (ECF No. 65–5 p. 6.) When the line below a field is left blank on a dispute response, the furnisher is indicating that that information should continue to be reported—in this case that "D" for "DEFERRED" should continue to be reported in the Terms Frequency field. (*Id.* p. 7.) "Based on [defendant's] instruction to report '[D] DEFERRED' in the Term[s] Frequency data field, Equifax reported the account as in forbearance." (*Id.*) Defendant urges me not to consider the declaration because plaintiff never furnished the purported subpoena in violation of Federal Rule of Civil Procedure (Rule) 45(a)(4). (Def.'s Reply Br. p. 6 n. 1.) Had defendant been given the opportunity to review the subpoena, it would have objected to its untimeliness. (*Id.*) Plaintiff responds that defendant's argument should be deemed waived because it was placed in a footnote and, in any case, he "did not serve a subpoena on [defendant] because [he] never served a subpoena on the third party Equifax." (ECF No. 73 p. 2.) I agree with defendant (ECF No. 75 pp. 1, 2) that this representation is inconsistent with plaintiff's letter to Magistrate Judge Rukhsanah L. Singh requesting to stay briefing on the pending motion because he "issued a subpoena to Equifax and [wa]s still working on satisfying the subpoena with Equifax's counsel." (ECF No. 60.) Rule 45(a)(4) requires that, if a subpoena seeks production of documents, electronically stored information, tangible things, or a pre-trial inspection of premises "then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). "The failure to provide proper notice may result in the court quashing the subpoena, precluding the use of any materials obtained, or imposing monetary or other sanctions on the offending party." 2 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary §45:32 (2025) (footnotes omitted). Whether plaintiff violated Rule 45(a)(4) need not be determined here. I find that Hollon's opinion along with Ulzheimer's testimony are sufficient to create a genuine dispute whether defendant verified inaccurate information.

2022). At the same time, defendant asserts that its dispute investigations were affirmatively reasonable. (Def.'s Mot. Br. p. 7.) Reasonableness "is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Tauro*, 684 F. App'x at 242 (quoting *Cortez*, 617 F.3d at 709). I do not find that the reasonableness of defendant's investigations are "beyond question" on the record before me. *See Burns v. Ford Motor Credit Co. LLC*, Case No. 19–01647, 2021 WL 1962856, at *5 (E.D. Pa. May 27, 2021) (denying summary judgment because the reasonableness of the defendant's investigation procedures was an issue of fact for a jury to decide).

Similarly, I conclude that whether defendant's actions were willful or negligent is also a question for trial. To support willful noncompliance of the Fair Credit Reporting Act under 15 U.S.C. § 1681n, "a plaintiff must show the defendant acted knowingly or with reckless disregard of the statute's terms." *Hafez v. Equifax Info. Servs., LLC*, 666 F. Supp. 3d 455, 460 n. 4 (D.N.J. 2023). Liability under 15 U.S.C. § 1681*o* stems from negligent noncompliance. *See Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 247 (3d Cir. 2012). Defendant argues that it did not act willfully or negligently because it followed industry guidance and never furnished or verified inaccurate information. (Def.'s Mot. Br. p. 18; Def.'s Reply Br. pp. 11, 12.) However, I have already concluded that a genuine dispute exists whether defendant verified inaccurate information. The question of willfulness or negligence will thus be left for trial. *See Hopkins v. I.C. Sys., Inc.*, Case No. 18–02063, 2020 WL 2557134, at *10 (E.D. Pa. May 20, 2020) (denying summary judgment "[b]ecause the [Fair Credit Reporting Act's] willfulness prohibition also reaches conduct that is reckless, and recklessness is a jury question …."); *see also Coulter v. Chase Bank USA, N.A.*, Case No. 18–01538, 2020 WL 5820700, at *12 (E.D. Pa. Sept. 30, 2020) (noting

11

that courts have rejected the argument that adherence to industry guidelines provides a shield from Fair Credit Reporting Act liability).

### B. Damages

#### 1. Party Arguments

In addition to its position that plaintiff cannot establish a triable issue on liability, defendant also contends that plaintiff's claim fails because there is no evidence of cognizable damages and to the extent that there were any damages, they were not caused by defendant. (Def.'s Mot. Br. p. 19.) Defendant notes that the February 2020 rate lock sought by plaintiff expired prior to the reporting of forbearance and that plaintiff ultimately obtained a loan with more favorable terms. (*Id.* p. 20.) Plaintiff does not provide proof of additional credit denials or any negative impact to his FICO score. (*Id.* pp. 20, 21.) As for plaintiff's claims of emotional damages, defendant argues that plaintiff did not seek medical treatment and his bare claims of humiliation are insufficient. (*Id.* pp. 21, 22.) Finally, without proof of willfulness, defendant states that plaintiff is not entitled to punitive damages. (*Id.* pp. 22–24.)

Plaintiff counters that there is ample evidence that defendant's actions impacted his credit. (Pl.'s Opp'n Br. p. 24.) While he eventually obtained a loan with better terms, merely refraining from applying for credit while his account was misreported is sufficient, according to plaintiff. (*Id.* pp. 24, 25.) Defendant's reference to his FICO score is irrelevant because the damage to his credit is reflected in his inability to receive an interest rate while his account was reported as in forbearance. (*Id.* p. 24.) Lastly, plaintiff asserts that testimony, if specific enough, may be sufficient to create a question of fact as to emotional damages without evidence of medical treatment. (*Id.* pp. 26, 27.)

#### 2. Analysis

Plaintiff states in his declaration that he attempted to finalize a cash out mortgage in April 2020 but could not lock in the interest rate due to

12

underwriting guidelines preventing issuance of a mortgage to consumers in forbearance. (Pl.'s Decl. p. 1.) After requesting that his account be taken out of forbearance, plaintiff again sought to obtain a mortgage on May 4, 2020 only to learn that his credit report still indicated that his account was in forbearance—leading to the disputes. (*Id.* p. 2.) Plaintiff claims that he was unable to close on a mortgage until the error in his credit report was corrected, which did not take place until July 2020. (*Id.*) In the interim, he experienced financial challenges and approached friends and family for help with living expenses, resulting in fear, loss of sleep, anxiety, weight loss, hopelessness, and stress headaches. (*Id.*) The declaration of plaintiff's wife, Fay Rubin, corroborates the family's financial struggles between April 2020 and July 2020 and plaintiff's sleeplessness, weight loss, anxiety, and headaches. (ECF No. 65–11 (Fay Rubin Decl.) p. 2.)

To repeat, plaintiff's claims may be predicated only on defendant's actions following its notice of the disputes from the consumer reporting agencies. *See Seamans*, 744 F.3d at 864; *see also Carestia v. Experian Info. Sols., Inc.*, Case No. 15–04598, 2016 WL 1626019, at *4 (D.N.J. Apr. 25, 2016) (noting that a furnisher's duty to investigate is triggered only after it receives notice of a dispute from a consumer reporting agency). From that point in chronology, plaintiff's claims of damages are focused on his inability to obtain a mortgage until the error was corrected in July 2020, financial challenges suffered in the interim, embarrassment in having to ask friends and family for money to cover living expenses, and related stress and anxiety and physical manifestations.

Defendant is correct in pointing out that plaintiff has not produced evidence of relevant credit denials in support of his claim for damages. (Def.'s Mot. Br. pp. 19–21.) However, credit denial is not a prerequisite to recovery under the Fair Credit Reporting Act. *Coulter*, 2020 WL 5820700, at *13 (denying summary judgment upon the plaintiff's response to interrogatories

stating that she suffered emotional distress and embarrassment and testimony as to her economic damages).

In the same vein, defendant's arguments that plaintiff did not seek medical treatment and offers only "arbitrary claims" of embarrassment (Def.'s Mot. Br. pp. 21, 22) are insufficient to warrant summary judgment. "[T]he Third Circuit does not require corroborating testimony to show emotional harm …." *Burns*, 2021 WL 1962856, at *6. That testimony may be uncorroborated or lacking in specificity goes only to the weight and credibility of the evidence. *See Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 610 (E.D. Pa. 2012); *see also Cortez*, 617 F.3d at 720 ("If a jury accepts testimony of a plaintiff that establishes an injury without corroboration, the plaintiff should be allowed to recover under the [Fair Credit Reporting Act]. The fact that the plaintiff's injuries relate to the stress and anxiety caused by the defendant's conduct does not change that.").

Here, plaintiff has provided a declaration claiming that he suffered sleeplessness, anxiety, weight loss, headaches, and other emotional damages. (Pl.'s Decl. p. 2.) His wife's declaration corroborates these claims. (Fay Rubin Decl. p. 2.) The adequacy of such evidence is for trial, not summary judgment. *See Coulter*, 2020 WL 5820700, at *13–14 (concluding that the plaintiff adequately alleged damages, in part, through her answers to interrogatories claiming loss of sleep and emotional distress and the corroborating testimony of her husband).

Finally, I cannot conclude that plaintiff is not entitled to punitive damages. Again, punitive damages may be awarded for willful violations. *Cortez*, 617 F.3d at 718. As stated above, willfulness will be resolved at trial, thus so too must the issue of punitive damages. *See Burns*, 2021 WL 1962856, at *6 ("Whether Ford Motor's conduct rises to the level of a 'willful' violation,

which would entitle Plaintiff to an award of punitive damages, is another question for the jury to decide.").

In sum, plaintiff asserts that defendant conducted unreasonable investigations and that he suffered financial and emotional damages as a result. The record before me is sufficient to stave off summary judgment.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (ECF No. 54) will be DENIED. An appropriate order accompanies this opinion.

                                    */s/ Edward S. Kiel*
                                    **EDWARD S. KIEL**
                                    **UNITED STATES DISTRICT JUDGE**

Dated: June 26th, 2025